446

212 So.2d 689

George Alvin **CURTIS**

v.

**STATE.**

**8 Div. 117.**

Court of Appeals of Alabama.

May 21, 1968.

Rehearing Denied June 28, 1968.

Ralph Slate, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Carl E. Watson, Asst. Atty. Gen., for the State.

CATES, Judge.

Curtis appeals from conviction of voluntary manslaughter with a seven year sentence.

We quote from his brief:

"The state's evidence tended to show that Hansel Black died as a result of gunshot wounds inflicted upon him on or about the 26th day of January, 1965, by the defendant, George Alvin Curtis. The state's evidence tended to show that the deceased was operating an illegal whiskey still, along with several other men and that the defendant came upon the scene. That an argument ensued, and that the defendant shot the deceased, who died in route to the hospital.

"The defendant's evidence tended to show that the deceased was a man who had a reputation for violence. That on the day in question he abused and cursed the defendant. That the defendant attempted to leave the scene of the shooting before it happened, but that the deceased called him back. The evi-

dence further tended to show that the deceased had a reputation for carrying pistols, that he cursed and struck the defendant, and that he told the defendant that if the defendant would not fight him, that he would have to 'out draw him.' That the deceased struck the defendant violently three or four times with his fists, reached for his pocket, at which time the defendant pulled his pistol and shot the deceased one time. The evidence further tended to show for the defendant that the trouble ensued in a hollow, that there was woods, underbrush, and a hill which effectively prevented the defendant from retreating. The evidence of the defendant further tended to show that by attempting to retreat the defendant would have increased his danger. The evidence further tended to show that the defendant did attempt to retreat but was called back to the scene by the deceased, and beaten by the deceased within arms length of each other. That the two parties were in arm length of each other at the time the deceased made his statement and made a motion for his pocket in a threatening manner, and that the defendant shot him only one time though his gun held several bullets."

## I.

The first specification of error is that the trial judge should have charged on manslaughter in the second degree. We find no written request for such a charge tendered before the jury retired. Hence, there is no appellate question. Code 1940, T. 7, § 273.

## II.

The second point raised in appellant's brief is:

"The Court erred in allowing the toxicologist to testify as to ballistics, tests made thereon, on the introduction of the two slugs in this case without proper qualification of the toxicologist as an expert in that field."

No objection was interposed on this ground and hence no ruling was had from the trial judge as to the witness's being or not being an expert as to ballistics.

## III.

Thirdly, Curtis's brief submits:

"The Court erred in allowing Mrs. Hansel Black to testify that she had heard the defendant admit shooting Hansel Black at a previous trial without proving the circumstances around the admission at the former trial, in that the defendant at that stage of the trial may have elected to remain silent."

The transcript of evidence shows the following:

"Q Is your name Mrs. Hansel Black?

"A Yes, sir.

"Q Are you the same Mrs. Hansel Black that testified earlier in the day in this trial?

"A Yes sir.

"Q Mrs. Black in November of 1966, were you present and in Court when George Alvin Curtis was tried for 2nd degree murder of Hansel Black?

"A Yes, sir.

"Q Were you present and in Court when Mr. Curtis testified from the stand?

"A Yes, sir.

"Q Were you present and in Court when Mr. Curtis admitted from the stand that he shot and killed Hansel Black?

"A Yes, sir.

"MR. PROCTOR: Now, we object, if the Court please. That's not legal evidence in this case.

"THE COURT: Not legal evidence proven that way?

"MR. PROCTOR: No, sir.

"THE COURT: I will overrule the objection. There might be some question about the form of his question.

"MR. PROCTOR: Well, we object on that ground, then.

"THE COURT: I think it's proper for him to prove the fact of the question, not the form. I believe you asked—what was the question you asked?

"MR. BURNEY: I asked if she was present when he testified from the witness stand.

"THE COURT: And then what did you ask her then?

"MR. BURNEY: I asked her if she was present before when he testified that he shot and killed Hansel Black.

"THE COURT: Well, he didn't—

"MR. PROCTOR: Leading question, if the Court please.

"THE COURT: He testified that he shot him?

"MR. BURNEY: Pardon me, Judge?

"THE COURT: Your question was, was she present when he testified that he shot him?

"MR. BURNEY: Yes, sir.

"THE COURT: I will overrule the objection.

"MR. PROCTOR: We reserve an exception.

"THE COURT: Did you answer his question?

"THE WITNESS: I said, 'Yes, sir.'"

■ Under the discussion in 23 C.J.S. Criminal Law § 892, we consider that error is not shown. Initially Mrs. Black answered before objection was interposed. Also, while no predicate was laid for the use of former testimony (see McElroy on Evidence, 2d Ed., § 245.0), yet we consider that there is no showing of any infirmity, such as lack of counsel, at Curtis's former trial. Cf. United States ex rel. Machado v. Wilkins, 2 Civ., 351 F.2d 892.

Nor is there a question of breach of the constitutional privilege against self incrimination, unless the former evidence was given involuntarily. 22 A C.J.S. Criminal Law § 655a; State v. Bailey, Wash., 426 P.2d 988. The first trial was the occasion for Curtis to have claimed his privilege. Anno. 5 A.L.R.2d 1404, § 4, p. 1411.

From Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, we quote:

"Edmonds says the trial court erred in permitting *parts* of his testimony to be read to the jury at the second trial, at which he did not take the stand, although he admitted the accuracy of the transcript which was used. The reception of his statements at the prior trial violated his privilege against self-incrimination, it is argued.

"It is generally held, unless a statute directs otherwise, that a defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case. The fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible. * * *" (Italics added.)

Moreover, in the instant trial Curtis took the stand and testified, inter alia, that he shot and killed Black but only in self defense. We note that the question put to Mrs. Black extended only to whether Curtis had formerly testified to shooting and killing Black. The enquiry did not go into Curtis's motives or intent.

We have carefully considered the record and conclude the judgment below is due to be

Affirmed.